May it please the Court, my name is Petter Batalden and I represent the appellant GECCMC. This is a landlord-tenant dispute about unpaid rent on leases of commercial real estate. And the primary issue is the assignment of tenancies. Now, when a tenant assigns his lease to an assignee, the landlord on that lease becomes a third-party beneficiary of the assignment. So the landlord can sue the assignee directly, whether it's for breach of unpaid rent or another covenant or term of the lease. Here, GECCMC is in the position of the landlord, and JPMorgan is in the position of the assignee, because it acquired and assumed these leases when it took over Washington Mutual's assets. We wish it weren't that simple. Well, it is and ought to be that simple, Your Honor. JPMorgan says, although in the ordinary case a landlord is entitled to sue the assignee, this case is different because we don't even have standing. We can't even establish our right to sue the assignee, because the purchase and assumption agreement is off limits. In other words, JPMorgan is using the purchase and assumption agreement or standing doctrine as an evidentiary barrier, like a privilege.  To point out that JPMorgan is properly the assignee that we can sue. And standing doctrine doesn't support that proposition. If you think about it, JPMorgan's position is circular. JPMorgan says only parties and third-party beneficiaries can interpret a document. Well, how do you determine who the parties and third-party beneficiaries are? You have to read and look at the document.  So now we're in this catch-22 from which a plaintiff will never emerge. A plaintiff only needs to show, for purposes of modern standing doctrine, that it has suffered an injury and that the lawsuit is likely to redress that injury. And we've done that here. We've shown that we are injured by the tenant's failure to pay rent, and we've shown that we can trace our title, we can trace the tenant, to JPMorgan using the purchase and assumption agreement. Now, I think it's important for us to make clear. We're not trying to enforce the purchase and assumption agreement in the normal way. We're not claiming a breach of the purchase and assumption agreement. We're not claiming any remedies under the purchase and assumption agreement. We're using it as an evidentiary tool to establish the chain of title so we can show who our tenant is. You're just saying that this has been assigned and we have a new tenant, and the new tenant assumes both the rights and obligations of any new tenant. End of story. That's right. And the question is whether the document that transfers the assets to Chase operates as an assignment of the lease in the ordinary way. And they say it doesn't. That's right. Even if we get past the standing issue, you still have the hurdle of the agreement  And, Your Honor, we locate our third-party beneficiary rights in Section 2.1 of the agreement, which is a very specific allocation. It designates a class of persons for whose benefit this agreement was made. We're not claiming we're the sole beneficiary or even the primary beneficiary, but we're a member of that class. So it says subject to Sections 2.5 and 4.8, the bank assumes. That's right. It commits J.P. Morgan to pay, perform, and discharge the liabilities of the failed bank, that's Washington Mutual, as reflected on its books and records as of the time it failed. That's a very specific designation. Now, there may be many people who were the beneficiaries of liabilities on Washington Mutual's books and records, but we are among that class, and that's a specific designation of persons or entities that this agreement is designed to benefit. Because, after all, a liability is an obligation to another person that is judicially enforceable. So J.P. Morgan and the FDIC knew very well when they settled upon that language that any person to whom Washington Mutual owed a liability would now be able to judicially enforce that obligation against J.P. Morgan. Well, the problem is there's an express provision in the agreement that says that it's for the sole and exclusive benefit of the FDIC and Chase. So how do you marry those two provisions to confer third-party beneficiary status on your client? I have a couple answers to your question, Your Honor. First, that general no third-party beneficiaries language is qualified or modified by an introductory clause that says, except as otherwise provided. Specifically provided. That's right. That's a huge word. And we satisfy the specifically element of that clause by showing that the liabilities are those on the books and records of Washington Mutual as of the date that the bank failed. That's a stretch. That's a stretch. Well, Your Honor, there was no better way to define those persons than to look at the books and records of Washington Mutual, which contained a list of all the liabilities that Washington Mutual owed. Well, to me, if there were going to be a specific provision as to third-party beneficiaries, there would have been a section saying we expressly intend to benefit these entities in entering this contract. Not a general assumption of liabilities. To me, that's not a specific provision in the agreement that addresses the third-party beneficiary issue. Well, Your Honor, I think the modifying clause in the lead-in to the no third-party beneficiaries clause, the part that says except as otherwise specifically provided, that has to be read as an acknowledgment by the parties that they are creating third-party rights. Otherwise, that language does no work in the form of a contract. It would have been the wrong question. What are the third-party rights that are being created? That's right. It's clear that some are. Right. So the no third-party beneficiaries clause sort of washes out. It's a bit of a red herring. Well, it washes out unless, to pick up on Judge Rawlinson's point, unless the term otherwise specifically provided imposes a higher burden than can be satisfied by 2.1. And 2.1 applies much more broadly than merely leases. It applies, I assume, to deposits. For example, if you're taking over the bank, you assume the obligation to pay off the depositors. Is Chase arguing that it has no obligation to pay off the depositors because they're third-party beneficiaries? I don't believe so, Your Honor. And there are separate provisions in the purchase agreement that deal with depositors, borrowers. There are also carve-outs from the list of all liabilities. There's a schedule that follows this agreement. Is there something special about a lease so that we should treat third-party obligations with respect to a lease differently from, say, obligations to a depositor? Well, a lease is a preexisting contractual arrangement with a failed bank. And it cannot be the law that the FDIC and J.P. Morgan can launder a lease through a third-party or, sorry, through a purchase and assumption agreement and come out on the other end where no one's liable. We filed out of an abundance of caution an administrative claim against the FDIC, even though we don't believe they're the proper tenant, and that claim was denied. So that bolsters our point that J.P. Morgan must be the tenant. Someone has to be responsible. I'm not sure it's relevant to the decision here. Does the FDIC stand behind Chase as somehow a guarantor or an indemnitor? I'm going to have to let the FDIC's counsel answer that question. I'm not sure it's legally relevant, but I think, in fact, one way or the other, FDIC is on the hook as an indemnifier, even if they're not directly on the hook. But one of the questions that occurred to me as I read through this is there's an escape hatch, there's a window during which the acquiring bank, here Chase, can escape the obligation of a lease for bank premises if it does it within a certain time period. Ninety days. Yeah. My question is, well, if the third-party beneficiary analysis for leaseholds is as Chase says that it is, why do they need the 90-day window? They just don't have to pay anything under any lease, bank premises or not. Well, Your Honor, if I follow your question. This is a question for you. This is a softball, just in case you couldn't tell. I'll try to hit it. You say, oh, well, of course, that's your answer. And certainly I agree. And I don't think, beyond that point, I don't think that J.P. Morgan's bank premises argument has any purchase because. . . Well, that's just an abundance of caution. I mean, any prudent business person will try to make maximum effort to make their intent clear. So even though Chase could have, you know, thought it was covering all its bases by putting this clause in there, it also, just out of an abundance of caution, just in case three judges disagreed with the language in the contract, also exercise this right to opt out of the lease. Why wouldn't that be prudent? Well, they may have viewed it as prudent, but they weren't contractually entitled to give this lease back to the FDIC, as they were with leases of bank premises, because as we've alleged, and the Court must accept as true at this early stage of the case, these leases did involve bank premises under the contractual definition of that term. That's a question that we have to answer. That may or may not be true. I might be inclined to remand on that one, but I'm not sure. Well, I think ultimately the answer to that question has to be shown in discovery. We just don't know enough at this stage of the case, based on the pleading and the very limited judicially noticeable materials that we have that issue in the case. Did we get to that point? Well, Your Honor, if we establish that we are a third-party beneficiary, then this Court must reverse, because that was the basis. I agree with you on that, but I'm not convinced that you've established that. That's all I'm saying. I don't know what the other judges think on the panel, but you have to establish that you're a third-party beneficiary before we even get to that point. There is really no other way, we feel, to interpret Section 2.1 than that it passed liabilities of this type. Now, there may be debates over the scope and the scale of the liabilities that were passed, but we were one of those liabilities because we were a lease. Let me ask you this, which is a more sort of abstracted question. Is this a question of federal common law? No, Your Honor. J.P. Morgan took us down the path of applying California law by filing a motion to dismiss that cited an applied California law. We responded in kind, and the District Court applied California law. So the interpretation of the agreement and the standing question as framed for this Court is one of California law. Yeah, what if I think it's federal common law? What do I do with it then? Well, I think... Then you guys have all argued the wrong law. It may be that California law and federal common law are the same on the point, but am I bound or are we bound by everyone's understanding that this is California law? The reason I think this may be federal common law is we see this a lot with various forms of federal transactions, particularly banking transactions, that the United States Supreme Court has said, this is federal common law, so the uniform answer across the United States, not dependent on the vagaries of state law. Well, Your Honor, choice of law provisions in a contract are not of a jurisdictional character. They're waiveable. And is there a choice of law provision here that says California law applies? There's a choice of law provision that suggests the federal law or the law of the failed bank applies. But J.P. Morgan chose not to rely on that. We, as the other party to the dispute in the District Court, elected to apply California law, and we're free to do so. You can waive choice of law provision. But did you guys reserve the right to apply federal common law? They have reserved that right for some later day, but for purposes of this appeal... This may be that later day. No, Your Honor. They argued in the District Court that California law, they cited and applied California law. The District Court took J.P. Morgan at its word and applied California law. But are we bound by that application? Well... If it's a, are we revealing de novo? You are revealing de novo, and I guess the ultimate answer to the question is that there's really no difference. The FDIC conceded at footnote 18 of its intervener's brief that the outcome would be the same under either law. And we think that's exactly right, because the ultimate question about what interests, or what beneficiaries benefit from this purchase and assumption agreement is essentially the same. You're looking under federal common law at the intent to benefit third persons and the intent to give them judicially enforceable remedies. And that's built into the nature of what a liability is. It is an obligation to another that is judicially enforceable. Now, this is a little bit beyond what you and the other side seek to argue, but I'm inclined to think that federal common law should apply here, irrespective of what might have been the litigating strategies of both sides. But I'm also inclined to think that there's not much variation from state to state on third-party beneficiary law. Pretty much everybody follows the restatement intended versus incidental beneficiaries, and occasionally there are marginal cases that wobble a little bit, but the basic structure of the law, I think, is pretty much the same. I suspect that's probably correct, Your Honor. And to the extent that we're talking about an issue that involves the interpretation of a contract, we think the meaning of the contract is plain, and so it really doesn't make any difference. It's law of parole, evidence you apply, that sort of thing. Yeah. So we think we're entitled to prevail as the glossaire. I'd like to reserve my remaining time to rebuttal. Good morning, Your Honors, and may it please the Court. Joseph Brooks from the FDIC. Now, are you going to split argument? No, Your Honor. I'm going to take it all on myself. The whole thing. Okay. Is that because you guys are standing behind this as indemnifiers? We have both accepted the argument. We have both accepted the argument. Your Honor, I was quite surprised to hear what the issue is here today, because in the reply brief at page 1, it says, quote, the main issue on appeal is whether GECCMC qualifies as a third-party beneficiary of the PAA. If GECCMC is a third-party beneficiary, then it has standing. If it is not a third-party beneficiary, then it lacks standing. Close quote. The only modification I would make to that is there are a couple of words missing. It's the same one. It's intended third-party beneficiary. I think that's understood here, because everyone will agree that if you're not an intended third-party beneficiary, if you're merely incidental, you cannot enforce a contract. Your Honor, there's no question that this is a standing issue, because this is made clear in the Lujan case. You know, this Article III standing stuff to bring in the third-party beneficiary law, in my view, is just a total red herring. The third-party beneficiary law is established law. It existed before the invention of the Republic, before the drafting of Article III, before the invention of Article III standing in data processing by Justice Douglas. It is just an irrelevancy. The question is whether or not there's third-party beneficiary standing here, which is a non-constitutional, non-Article III question. Your Honor, I'll agree to disagree. It does not affect where we're going. Okay. You might want to read a really interesting article in the Yale Law Journal, 1988, published by someone I know very well on this point. I was going to make that, Your Honor. The critical issue here is this. The basic claim here by GCCNC is for rent under a lease, and they bring that claim against Chase. And their primary issue, as the district court pointed out, is Chase is not a party to that lease. In order for them to have standing in this court, in order for them to be in this court asserting a claim, they have to have a legally protected interest. They don't get it under the lease, so where do they get it? There's only one place they can get it, and that's under the Purchase and Assumption Agreement. So the question is, do they have a legally protected interest under the Purchase and Assumption Agreement? The answer to that question is only if, A, they're a party. It's undisputed they're not. Who's they a party? GECCNC. If GECCNC is not a party to the Purchase and Assumption Agreement, they cannot assert a legally protected interest. No, you're begging all of the questions. The question to me is, first off, is Chase an assignee of the lease? Under ordinary operation of third-party beneficiary law as applied to leaseholds, if you're an assignee of the lease, the landlord has rights against the assignee. Do you agree with that? Well, I would agree with that, Your Honor, but I would disagree. Okay. Once you agree with that, then the question is, does the Purchase and Assumption Agreement operate as an assignment of the lease to Chase? And you say it does not? It does not. Why not? It sure looks like an assignment to me. Your Honor, there is a provision in the Purchase and Assumption Agreement that says there are no intended third-party beneficiaries. But as your adversary pointed out, it's got a preface clause that says except as otherwise expressly provided. Well, Your Honor, it says except as otherwise specifically provided. I said expressly. I meant to say specifically. That's exactly what it says. Your Honor, and they refer to Section 2.1, the General Assumption of Liabilities Provision. That does not specifically provide intended third-party beneficiary rights to anybody. What was the purpose of putting that clause in there, that phrase in there, except as otherwise specifically provided? What was the intent of that phrase? Your Honor, I think the only way to understand why that's in there is to go through the case law, and I'll do it real quickly. Originally, as evidenced by Old Stone Bank, the Purchase and Assumption Agreements were just between the FDIC as receiver and between the assuming bank, the functional equivalent of Chase. That Purchase and Assumption Agreement in Old Stone Bank did not include that language. Move forward to the Wichita Falls office case, which is in the record. In that case, the no third-party beneficiaries provision was modified in two ways. It's in Appendix E, and you can see this. The except as otherwise specifically provided language was put in, and at the end the language that was put in is the FDIC and the assuming bank hereby agree that the FDIC as corporate can enforce this agreement without seeking permission or without the assistance of the FDIC. So the purpose was to allow corporate FDIC to be able to enforce the agreement independently. Move forward. Now and ever since Wichita Falls office associates, the FDIC includes FDIC corporate as a party. Therefore, they removed the language at the end, which says that the FDIC as corporate can enforce. The language was not removed except as otherwise specifically provided. We can only assume there's nothing that indicates otherwise out of inadvertence. But I will point out that it shouldn't matter. You would need to have a specific provision of an intended third-party beneficiary right somewhere in that contract in order for GECCMC to have standing here, or at least to be able to be a third-party beneficiary who can sue on this contract. Let me ask you this. Why do we have in the purchase and assumption agreement the 90-day window by which the acquiring bank can escape from leasehold obligations for bank premises? Your Honor, you have to understand it's not a question of escaping from leasehold obligations. The FDIC as a lessee is in a very different position from any other lessee because the FDIC has the choice to repudiate. But the lessee is the acquiring bank, not the FDIC. That's what the whole agreement is all about. The lessee would be the assignee. Now what happens here is you have... What do you mean by that? The lessee would be the assignee? Immediately after the failed bank fails, the FDIC steps in the shoes of the failed bank. In the normal lease assignment context, the FDIC is in the position of the lessee. And the issue here is did the FDIC... The FDIC in this case would be Washington Mutual. Is that what you're saying? It steps into Washington Mutual's shoes. And the issue is did the FDIC assign the lease to Chase? What I'm saying is the FDIC could have just repudiated it. Unlike the typical lessee, okay, it did not have an obligation to continue with the lease. Therefore, unlike the typical case, the third party is not a creditor beneficiary. But to get to your question, Your Honor, the reason why that provision is in there is because all banks generally, but national banks like Washington Mutual in particular, have branches all across the country. I think you understand the reason for my question. I know you've not gotten to it. That is to say, as I understand the 90-day repudiation provision for bank premises, it allows the acquiring bank here, Chase, within 90 days to say, We don't want this lease. We want to get out from under it. Why is that in there if your argument with respect to this lease is good? That is to say, your argument is that no lessee can be required to pay under a lease. So why do we need the 90-day window for bank premises? You just make the argument you're making to us with respect to bank premises, too. Your Honor, our point is not that no lessee can sue under any lease. Our point is a much different point. It is that no third party can rely on the purchase and sanction agreement as the source of its legal right. Clearly, lessee could sue Chase if it was occupying the premises and it failed to pay its rent. And the other thing that it can do is it can sue the party that's standing in the shoes of the lessee. But absent the repudiation by the bank for the leased premises, it could sue the acquiring bank for rent even if they don't occupy the premises because they need to repudiate within the 90 days. Isn't that right? I'm not sure I quite understood your question, Your Honor. This 90-day option, during that 90-day period, the FDIC is the lessee. The FDIC is the party that would be sued. At the end of that 90 days or within it, if Chase declines, the FDIC continues as the lessee. So in essence, this is an opportunity for Chase to decide which branches it wants to keep and which branches the FDIC is still going to be responsible for. Exactly. Which ones it wants to keep, which ones it wants to take. Exactly. I misspoke. Which one it wants to keep. So the repudiator is not then Chase. It's FDIC. The FDIC has a specific congressionally granted statutory right to repudiate, which makes it different from every other lessee in a lease assignment case. But the way the repudiation operates under this agreement, is it then Chase that repudiates or is it the FDIC that repudiates? Let me be very clear on this, Your Honor. Chase has no ability to repudiate. Chase has an option to take an assignment. After Chase declines that option, as it did here, the FDIC then takes a look at it and says, is this a lease that has value to the receivership? If it's not, if it has any burden on the receivership, Congress says we can repudiate it. Chase does not repudiate. Chase simply declines its offer. Okay, but let's assume then that the FDIC repudiates as to certain bank premises. As to other bank premises, there's no repudiation and Chase then becomes the lessee. Is Chase required to pay rent to the owner of the premises? Well, just let me reverse your order, Your Honor. The decision by Chase would come first. Assuming that Chase said, we're going to exercise our option and take that lease. Right. Okay? From that point forward, Chase is absolutely bound. They would be bound on that. And why are they? What binds them? In those instances, Your Honor, where Chase actually takes the lease, it would typically be at a minimum correspondence, but there is usually a separate document that's executed that says this assignment is confirmed to Chase and the landlord has given notice. A letter goes out from the FDIC and says this has passed. A letter goes out from Chase and says we have accepted the option. Indeed, what happened here was there was specific communication with the landlord from both Chase and the FDIC advising this landlord that Chase had declined the option. So it's like an assumption of the lease. If Chase elects to not keep or take. If Chase elects to take the leasehold interest, then it's like an assumption of the lease and all parties are brought into it. Correct, Your Honor. In the typical case, Chase looks and says, wait a minute. There's a bank branch right across the street from one that we have. For us to take this property, we won't use it. Sure. I mean, you know, anticipating our second argument, Your Honor, if you would, on mootness and specifically 12 U.S.C. 29, our position is that if Chase does not in good faith intend to use any of these leased properties for its banking business, it would be ultra-virous for it to take the lease. Certainly the FDIC is not going to force them to take the lease. But banking business and bank premises are not necessarily synonymous terms. Is that correct? Well, I mean, Your Honor, they may or may not be. What the parties intended and what. Certainly when you look at the language, bank premises versus other real estate, which tracks the statute, I mean, our view would be that's what the parties intended. The interpretation of the contract, of course, is for the court. It depends on how broadly you define premises. Well, no matter how broadly you define it, Your Honor, there can't be any question in this case. We're talking about buildings that were used for online banking and clearly, you know, banking operations. But we're not there yet in terms of. No, and I don't think we ever need to get there. But let me ask you this, then, to clarify. I mean, the original correspondence with the landlord here was an attempt to repudiate based on the argument this was bank premises, correct? Well, again, Your Honor, I don't mean to be stickler. It was notice from Chase of their decision not to take an assignment. I see. Correct. Not to take an assignment. But the underlying premise for that was that these were bank premises. Yes, that was. Your Honor, there is no evidence in this case that at all times from the moment that that purchase and assumption agreement was signed up until and including today that Chase and the FDIC both understood and believed that that was a bank premises and they acted consistent with that. Yes, but that remains to be tested. I mean, if we were to conclude, and I'm not sure we are going to conclude this, but if we were to conclude that the landlord here is an intended beneficiary as an assignee and you are the assignee, or rather the bank is the assignee and you're standing behind, well, whether these are bank premises and therefore Chase has the right to decline, that remains to be seen. I mean, we don't have evidence on that and so on. That's not yet in front of us, at least as I understand it. Your Honor, it may or may not be, but I don't think we get there, and here's why. The critical issue here is simply one as in all contract cases of intent. There's only one way that a third party becomes an intended third party beneficiary, and that's if the parties to the contract intend that. How do we find that out? Do you read the language of the contract? Well, there are three places you look here, Your Honor. You look at the language of the contract, and here we've got a no third party beneficiaries provision, and it couldn't be more clear what the parties intend. It could be more clear. Your Honor, no rights, no equitable rights, no nothing. If it were more clear, we wouldn't be here. If there were any doubt, there's a second place you go. The circumstances under which this contract was entered, okay? This contract was entered to resolve the largest bank failure in U.S. history. It was entered pursuant to FIREA. It was entered under circumstances where the impetus was to resolve the bank failure. If there were parties in GECCMC's position who in any way benefited, they would be classic paradigm incidental beneficiaries. There's no question about that. And there's a third place you go here. You're saying there's no question. There are lots of questions, including that. Well, Your Honor, I would refer to the options case, and specifically its discussion of Martinez. That was in the papers that were sent in at the last minute last week by our friends. And the Court looked at the situation where there was a government contract, which is what we have here, a government contract. And the government contract required that a factory be built in a neighborhood and that the neighborhood residents be hired as employees. The issue that came up was, okay, now that the factory wasn't built or the jobs weren't hired, can these residents sue as intended beneficiaries of this? And here's what the California Court of Appeals said just last Wednesday. They said certainly there was an intent that these residents would be benefited. But the larger purpose of the contract was to improve the neighborhood. These are classic incidental beneficiaries. It's the same thing here, Your Honor. The whole impetus for this was to resolve this massive $300 billion bank failure. Nobody was sitting around trying to benefit lessors. Why would they? The FDIC has to take care of depositors. They have to take care of the bank's creditors in line. And for people who have claims like GECCMC, they have an administrative claims process. If you think something was mishandled here, you go to the administrative claims process. And, in fact, GECCMC did that. And then what happens when your claim is denied? Let me ask you this. I'm back to 2.1, which is, to me, an important clause. I think to you, too. I assume that depositor of a bank is a third-party beneficiary under 2.1, a title to enforce against the acquiring bank, a repayment of the amount deposited in the original bank. Is that right? I don't know whether that's true or not. I won't point out. Depositors are specifically mentioned in 2.1 as opposed to lessors who are not. I understand that. The issue really is an academic one because depositors never… I'm still asking questions. I'm trying to go step by step. Okay, so it sounds like a depositor is someone who's a third-party beneficiary under 2.1. I would argue that they certainly would have a better claim than a lessor because they're specifically mentioned. Are you arguing that it's even possible that Chase will refuse to honor the claims of depositors when you say they have a good argument? No, not at all, Your Honor. I'm not saying that. What I'm saying, the issue isn't whether they would refuse to honor claims of depositors. The issue is whether a depositor would need to go through the PAA to get them, and they wouldn't. The depositor would go to Chase and say, you have our money. Well, yes, and the reason Chase responds, yes, I have your money, and yes, I have an obligation to pay it to you, is 2.1. Well, I don't know that a depositor would know that, Your Honor. The reason why they would… What the depositor knows is irrelevant. What I want to know is where does the obligation on Chase to repay the depositor come from, and it looks to me as though it comes from 2.1. It comes from 2.1 with respect to an obligation it undertook with respect to the FDIC. And the FDIC can… I understand. Okay, so I think we've got – it shouldn't have taken this long to get here. I think we have established that Chase has an obligation to repay the depositors into WAML. And I think we've established that that obligation comes from 2.1. It also appears that it has the obligation for liabilities associated with any and all employee benefit claims, because they're also specifically mentioned. They are specifically mentioned, Your Honor. How about obligations to suppliers to the bank? Let's say the bank had bought, I don't know, 25 reams of paper, and the bill isn't paid yet. Does that supplier have an obligation – have a right to enforce against Chase? I would say no, Your Honor, because… Chase can just say all the contracts that the bank has assumed that it owes money on, it doesn't have to pay unless they're to depositors or to employee benefit plans? Is that your argument? No. It's clear if it was assumed. The FDIC can retain some contracts, they can assign other ones to Chase. If you're telling me that it's stipulated, that it was actually assigned to Chase… Well, listen, I'm reading the language of 2.1. Assuming bank, that is to say Chase, expressly assumes and agrees to pay all of the liabilities of the failed bank which are reflected on the books and records of the failed bank, that sounds to me as though if they've got a contract for supplies delivered to the bank and they owe $200, they've just assumed that obligation. Well, Your Honor, I think in the first instance, if there is a claim that the creditor has there, okay, the creditor could have the claim against Chase or against the FDIC. It could be against either one of them. Would you please answer the question? I asked you or I wanted you to say yes or no. It sounds as though the bank has assumed the obligation to pay the $200 for supplies previously delivered and that WAMU owed. And they owe that obligation because they've assumed it under 2.1. Am I wrong? No, I would agree with that, Your Honor. Okay. What I would disagree with is that given the language of 13.5, that that supplier, suppose it's somebody who just sold one pencil to WAMU before it failed, that that supplier, okay, can go and enforce the purchase and assumption agreement and interpret it in a way contrary to the two contracting parties. I believe that that is a very different question. You know, you keep losing me. What do you mean different from the two contracting parties? The two original contracting parties under my hypothetical were WAMU and the supplier. Right. WAMU says, give me whatever, however many reams of paper, I'll pay you $200. The supplier delivers the paper at the time of the purchase and assumption agreement WAMU had not yet paid. At that point, I think under 2.1, Chase owes the obligation to pay the $200. That's the contract. And you said, but under the terms of the contract being altered, where's all this coming from? But if that's so, how do you distinguish an obligation to a supplier under a contract from an obligation to a landlord under a contract? Your Honor, I don't distinguish them. But your whole premise isn't to distinguish them because you say the landlord doesn't get to enforce, even though the supplier does get to enforce. Would the rental obligation be on the books, though, as an account stated? Because that, to me, that presumes that the supplies have been delivered, they've been used, and there's just money owed on something that's already been purchased. But a lease for 50 years is different than an account that supplies that have been delivered and have been used by the company. Your Honor, let me clarify one thing, and let me try and do it this way. Just give me one minute to go round about here. It has been suggested to the court, perhaps by the manner in which these cases have been submitted, the court is well aware that this very issue, whether or not a lessor of a failed bank has the ability to be an intended third-party beneficiary of an FDICPAA. That issue has been litigated since 1990 14 times. There is no split in authority on that issue. On that issue, 12 courts have held no, not an intended third-party beneficiary. Two other courts have not addressed the issue at all. They found standing based on maybe New York assignment law or Texas property law. Now, that is a uniform body of case law that is being sought to be disregarded here. One of those cases in particular I want to focus on, because it goes right to this issue, Wichita Office Associates. It is Appendix E to the Chase Brief. Facts are as follows. Bank fails. FDIC takes over. And we're in a period of time, the 90-day period. And as Your Honors may be aware from the briefs, there is a provision of all of these purchase and assumption agreements that says, assuming bank shall pay rent, taxes, assorted charges, during the period that it occupies and before it makes up its mind. Assuming bank doesn't pay. Okay. Lawsuit in front of Judge Barefoot Sanders, Northern District of Texas in 1993. And the issue is can that landlord enforce that provision, which is more specific than 2.1. Can he enforce that provision, okay, of the purchase and assumption agreement? And the answer is no, per Judge Sanders, affirmed by the Fifth Circuit, Fifth Circuit, excuse me, without opinion. And the reason why it's no is because he says that that provision of the contract, more specific than 2.1, is not sufficiently specific to incorporate the except as otherwise provided language of Section 2.1. That issue is precisely the issue here, except that's a harder case. Because, again, the language about the obligation of the assuming bank to pay those occupancy charges is even more specific than the language here. The bottom line here is that language in 2.1, that general assumption of liabilities provision, the parties put that in. What were they intending? This was a contract that provided for the disposition of some 2,000 leases, yes, and over $300 billion of non-lease assets. It cannot be the case that the FDIC and Chase intended that every person who is owed any one of those liabilities has the ability to come in, interpret the FDIC and Chase's agreement contrary to the way they do, and then enforce that interpretation against the FDIC and or Chase. It would be contrary to the whole purpose of FIREA, which is for the FDIC to efficiently, expeditiously, and most cost-effectively wind up a bank failure. If they are going to be, in effect, providing the opportunity for lawsuits by each and every person that was owed a liability by the failed bank to come in and challenge the interpretation of that contract, it's going to be Katy bar the door. So what happens instead? It's very simple. If GECCMC does not like what happened here, FIREA provides a remedy. That remedy is sue the FDIC. That case is pending in the federal district court in the District of Columbia. For this court to say otherwise would be to nullify what the FDIC has done here. So the FDIC got together with Chase, accepted as timely. It's declining the assignment. The FDIC made a determination at that point that the lease was burdensome, and the FDIC repudiated that lease. That cannot be denied. GECCMC is... And you have the right to repudiate it if it's bankruptcies. If the FDIC did not have the right to repudiate the lease, the proper party to litigate that issue against is the FDIC for improperly repudiating that lease, and the proper form to do that was in the first instance in the administrative claims process. One question, though, and that is, do you think this is federal common law, or do you want to go to the different law of the different states in every one of these cases where you've got different contracts in different states? Your Honor, we think it's federal common law, and we don't think there's much of an issue given the provision of contract. But I would point out, it doesn't make a lot of difference after last Wednesday because, as the Court pointed out, the law in California on third-party... I understand that with respect to California and federal common law... It's a finer point. It's a much finer point. It says that government contracts are subject to third-party beneficiary principles, quote, except to the extent that application would contravene the policy of the law authorizing the contract or prescribing remedies for its breach. In other words, under California law, even, if there is a conflict between FIREA and its purpose and third-party beneficiary principles, FIREA trumps it. Thank you very much for your time, Your Honor. Roberts. Thank you, Your Honor. This Court owes J.P. Morgan and the FDIC no deference in interpreting the purchase and assumption agreement. It's a contract. The meaning of its terms presents a legal question. This Court can determine that issue. There were no fact findings. There's no parole evidence, although you heard a very extensive discussion of extrinsic evidence about how the meaning of these purchase agreements has changed over time. That's not in the record before this Court, and that's not an appropriate basis for deciding the issues now. All we have here is an issue framed by a very narrow pleading and the contract that's before you. I'd like to take up this question of the statutory purpose because my friend keeps coming back to the statutory powers that the FDIC has to repudiate leases. But this case isn't a referendum on the FDIC's statutory power under FIREA. The question is one of what powers they granted themselves under the contract. It's a question of contract law, not statutory law. Well, it's framed by the statute. We're not disputing that the FDIC might have had the power to repudiate these leases if it wanted to. But they didn't draft the contract to accomplish that purpose. That's the point. And the only question here is whether under this contract we have third-party beneficiary rights, not whether the FDIC could have differently drafted the agreement to accomplish the purpose they now want to serve. The other point about FIREA that plays in here is that there's an element of historical revisionism in the FDIC's account. This purchase and assumption agreement was executed in the fall of 2008 at a time when the financial system was teetering on the brink of collapse. There was a very real fear of runs on banks. And it was fueled by a crisis in confidence. And the way that this agreement bolstered that confidence was by guaranteeing borrowers, depositors, and everybody who did business with banks that Chase would be good for the money. Not that Chase would be good, that the FDIC would be good. But this agreement says that Chase assumes all liabilities subject to certain cargoes that aren't pertinent here. And Chase is kind of buying a pig and a poke. I mean, these things go down so fast that Chase kind of knows what it's getting and it kind of doesn't. And it might get some things it likes and it might get some things it doesn't like. And we know not just from this case, from some of the others, that some of the banks got good deals and some of the banks got bad deals. I mean, this is kind of what happens. Let me ask you this. Is the authority on this point as uniformly contrary to your position as the FDIC lawyer makes out? Absolutely not. He says 12-0 with two abstaining. Well, we have a number of unreported district court decisions that have been cited on this question of standing. They're split. We cited some in our time. How on the question of standing, on the question of whether or not a landlord is entitled to get lease, to get, to enforce a lease against a takeover bank? Your Honor, I'm not sure what the tally is. And the reason is because there's a complicating factor here. Leases, as you know, both have elements of property law and contract law. Most of these other cases have been litigated as property law cases where it's privity of estate that the plaintiff is seeking to get. But are you aware of any case, regardless of how it's structured, that has held that a landlord can enforce a contract against a successor bank following an FDIC takeover? Are you aware of any case? In this context, no, Your Honor. But I would give this answer to your question. Judge Fisher in the district court here in the Central District issued a decision denying Chase's 12b-6 motion, same motion that we have in our case, on the basis that there was at least an ambiguity about the relationship between 2.1, the no third-party beneficiaries clause, and so forth. Judge Fisher ultimately resolved that case at the summary judgment stage, after there had been discovery in favor of Chase, because there was parole evidence at that stage that allowed her to determine what exactly the contract meant. But we have no such evidence here. On this very barren pleading where we have alleged that our lease was recorded on the books and records of Washington Mutual at the time of the takeover, we are entitled to show that we're a third-party beneficiary and move forward to discovery. Isn't Judge Fisher's case in a holding pattern now waiting for this case? I suspect that's true. I can't speak to the Court's internal machinations. I haven't investigated, but I thought it was. I thought there was something about that. There are a handful of cases arising from the Central District. How do you distinguish the Wichita case down in Texas? Well, my friend mentioned that it was about, what, 10, 20 years ago? Well, my friend mentioned it was that the purchase and assumption agreement had different language. It's been modified over time. Well, the language in this case has some pretty specific language about not creating any third-party beneficiaries. That's true, Your Honor. But that no third-party beneficiaries language is modified by an opening clause that says accept as otherwise specifically provided. So we know that they intended that they were creating third-party beneficiary rights somewhere. Otherwise, that accept clause has no meaning, and you can't give it no meaning in interpreting the contract. It wasn't all this straightened out in a pretrial order. I'm sorry, Your Honor? In a pretrial order, a pretrial conference order. Do they still have those? Yes, they do, under Rule 16, and we hope to get to that point, because we think that if there's a This is just an interlocutory appeal. Well, we've been denied our day in court for lack of standing. This is not an interlocutory appeal. Our claim has been adjudicated against us. You got stopped short of a pretrial trial. So this is, I don't know whether to call it 12b-6 or 12b-1. I'd call it 12b-6. Yes, because there were no factual findings. 12b-6 with the contract attached. All we've got is just the bare language of the document, the P&A order. That's right. And I think what this discussion shows is that at the very least, there are ambiguities and lack of clarity that can be resolved through discovery. Well, ambiguity means two meanings. We use it loosely quite often conversationally to say that something's a cluster of something, but we don't use the original meaning. Now, what are the two meanings possible here? Either this is bank property that's accepted, that the S&E can take it or leave it if they want to, or it isn't. Isn't that one? There's nearly two meanings about that. Yes or no. I think that's right, Your Honor. If this is bank premises, then, as Mr. Brooks explained, Chase had an option to exercise, to take it. But our point is there's no evidence on the pleading and the contract. I assume that if it turns out that this is bank premises, they've exercised that option. I believe that's correct, Your Honor. So if it turns out, even if we were to hold that your client is a third-party beneficiary with respect to these leaseholds, two of them, that, nonetheless, you may lose if it is ultimately determined that these are bank premises. It's possible. We'll have to let discovery take us where it goes. But certainly at this stage, that issue cannot be resolved. It seems to me that this, in a funny way, is not that broad a case in terms of impact because, of course, most properties leased by banks will be bank premises. This is an unusual form of lease in which the bank is leasing property for bank purposes, and it may or may not be bank premises. But there are not going to be a lot of such leases. Most bank leaseholds will be bank premises and come under that provision of the assumption agreement. I think that's probably right, Your Honor. The definition talks about bank branches essentially. In-person facilities tell us we don't have that. But whether this is a bank premises, in my view, is not in front of us at this time. That's for later if we get there. Okay. Thank you. Thank both sides for your arguments. GECCMC and so on versus Chase Bank and FDIC submitted for decision. Thanks very much, and we are in adjournment for the day. All rise. This court for this session is adjourned.
judges: Goodwin, Fletcher, Rawlinson